IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 13–cv–00125–WJM–KMT

CHESTER LEE RENEAU,

      Plaintiff,

v.

SASHA MAHONEY, sued in her individual capacity,

      Defendant.

_____

### RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE
_____

**Magistrate Judge Kathleen M. Tafoya**

      This case comes before the court on "Defendant's Motion for Summary Judgment" (Doc. No. 28 [Def.'s Mot.]) filed April 9, 2013.   Plaintiff filed his response on June 11, 2013 (Doc. No. 40 [Pl.'s Resp.]), and Defendant filed her reply on June 25, 2013 (Doc. No. 41 [Def.'s Reply]).

      Also before the court is "Plaintiff's Motion for Summary Judgment" (Doc. No. 25 [Pl.'s Mot.]) filed April 3, 2013.   Defendant filed her response on April 18, 2013 (Doc. No. 35 [Def.'s Resp.]).   Plaintiff did not file a reply.

      These motions are ripe for recommendation and ruling.

***Undisputed Facts[1]***

1.      At all times relevant to Plaintiff's claims, he was being held in the Larimer County Detention Center for a probation violation and revocation.[2]   (Compl. at 3, 4, 10.)

2.      On January 28, 2012, shortly after morning meal service was concluded at approximately 6:45 a.m., Larimer County Deputy Aaron Wright ("Wright") asked Plaintiff how he was doing.   (Def.'s Mot., Wright Aff., ¶ 2.)   Plaintiff replied that he would be much better after the judge's family was all dead and that he had just been sentenced to three years at the Colorado Department of Corrections.   (*Id.*, ¶ 2, 3.)

3.      Wright told Plaintiff his comments were inappropriate and that he would talk with Plaintiff more later.   (*Id.*, ¶ 3.)   After noon meals had been completed, Plaintiff asked Wright to read something that he had written on a piece of paper (the "French Letter").   (*Id.*, ¶ 4.)   The French Letter contained a statement to the effect of, "Life's a bitch and so is your mother and father."   (*Id.*)   At the top of the French Letter, the name "French" was written; Wright recognized this to be the name of a local judge.   (*Id.*, ¶ 5.)

4.      Shortly thereafter, Plaintiff brought a letter to the control room, stated he had legal mail, and handed the envelope to Wright.   (*Id.*, ¶ 5; Compl. at 2, ¶ C.2.)   The envelope was addressed to Judge Thomas French.   (Wright Aff., ¶ 5.)   Wright assumed Plaintiff was sending out the piece of paper he had earlier shared.   (*Id.*, ¶ 5.)   Wright called Defendant Corporal Sasha

---

[1] The court notes that Plaintiff did not follow District Judge William J. Martínez's Practice Standards, which require "[a]ny party opposing the motion for summary judgment . . . [to] provide a 'Response to Movant's Material Facts' in its brief, admitting or denying the asserted material facts set forth by the movant."   *See* Judge Martinez's Practice Standards, § 3.E.5.

[2] Plaintiff subsequently was transferred to the custody of the Sterling Correctional Facility. (Compl. at 10.)

2

Mahoney to tell her about the mail addressed to Judge French and about Plaintiff's earlier threats against the judge's family.   (*Id.*, ¶ 5.)

5.      Later that afternoon, Wright spoke with Plaintiff about his earlier statement and the statement on the piece of paper Plaintiff had shown to Wright.   (*Id.*, ¶ 6.)   Plaintiff stated that (a) he was upset and frustrated; (b) he had been sentenced to three years at the Department of Corrections for head butting a wall; (c) the judge would "get his"; (d) Plaintiff would not hurt the judge directly, but rather through his family; (e) Plaintiff hoped it would be the judge's wife; and (f) Plaintiff could find anyone's address on the internet.   (*Id.*, ¶¶ 6–8.)   Wright was very alarmed by these statements, and he informed Defendant Mahoney of the conference with Plaintiff.   (*Id.*, ¶ 8.)

6.      Because of concerns about statements Plaintiff had made regarding Judge French, and the belief that the contents of the envelope addressed to Judge French was the same paper Plaintiff had shown Wright earlier, Defendant Mahoney retrieved the envelope addressed to Judge French and opened it.   (Def.'s Mot., Mahoney Aff., ¶ 7.)   Defendant Mahoney then went to talk to Plaintiff about the French Letter and read Plaintiff his rights.   (*Id.*, ¶ 8.)

7.      While Defendant Mahoney was discussing the letter with her supervisor, Sergeant Saults, Wright called to inform Saults that Plaintiff wanted all of his outgoing mail given back to him.   (Mahoney Aff., ¶ 9; Wright Aff., ¶ 11; Compl., § C, ¶ 3.)   Plaintiff wanted his mail back so that he could destroy it.   (Mot., Ex. G.)   Plaintiff's request to retrieve all his outgoing mail raised safety and security concerns in Defendant Mahoney's mind, and she contacted Deputy Armentrout and asked him to retrieve and bring to her Plaintiff's outgoing mail.   (Mahoney Aff., ¶ 11.)

8.      Deputy Armentrout brought two letters to Defendant Mahoney.   (*Id.*, ¶ 11.)   One letter was addressed to Plaintiff's father.   (*Id.*, ¶ 12.)   The other letter was addressed to Danielle Cunningham in care of the "Dept. of Probation."   (*Id.*, ¶ 12.)   Defendant Mahoney opened the envelope addressed to Cunningham ("Cunningham Letter").   (*Id.*)

9.      The Cunningham Letter stated, "I was not smart enough to hitchhike to Mexico like I should have.   Now I have to spend 1½ to 3 years locked up.   But that's OK.   I get to spend all that time contemplating how much fun it's going to be watching the judge lose some of his Relatives when I get out.   Other than that I'am [*sic*] OK.   Well at least I'm off probation with you now."   (*Id.*)

10.     After investigation, on February 16, 2012, Plaintiff was charged in Larimer County District Court with the felony offense of Retaliation Against a Judge, a Class 4 Felony.   (Mahoney Aff., ¶ 11; Compl. at 13–14.)

11.     Plaintiff was tried and convicted of Retaliation Against a Judge, Attempt to Commit the Crime of Retaliation Against a Judge, and Menacing.   (Doc. No. 49, Exs. 11–13.) Plaintiff was sentenced to a term of ten years in the Colorado Department of Corrections.[3]   (Doc. No. 49, Ex. 15, ¶ 1.)

---

[3] Under Fed. R. Evid. 201(b), a judicially noticed fact must be one not subject to reasonable dispute in that it is either generally known within the territorial jurisdiction of the trial court or capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned.   *See* Fed. R. Evid. 201(b); *see also United States v. Schaefer*, 501 F.3d 1197, 1201, n.8 (10th Cir. 2007).   Exhibits 11 through 13 and 15, the records from Plaintiff's criminal prosecution, qualify as public records and their accuracy cannot reasonably be questioned.   Therefore, the court takes judicial notice of the records.

4

*Summary Judgment Standard*

Summary judgment is appropriate if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).   The moving party bears the initial burden of showing an absence of evidence to support the nonmoving party's case.   *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).   "Once the moving party meets this burden, the burden shifts to the nonmoving party to demonstrate a genuine issue for trial on a material matter."   *Concrete Works, Inc. v. City & County of Denver*, 36 F.3d 1513, 1518 (10th Cir. 1994) (citing *Celotex*, 477 U.S. at 325).   The nonmoving party may not rest solely on the allegations in the pleadings, but must instead designate "specific facts showing that there is a genuine issue for trial."   *Celotex*, 477 U.S. at 324; *see also* Fed. R. Civ. P. 56(c).   A disputed fact is "material" if "under the substantive law it is essential to the proper disposition of the claim." *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir.1998) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).   A dispute is "genuine" if the evidence is such that it might lead a reasonable jury to return a verdict for the nonmoving party.   *Thomas v. Metropolitan Life Ins. Co.*, 631 F.3d 1153, 1160 (10th Cir. 2011) (citing *Anderson*, 477 U.S. at 248).

When ruling on a motion for summary judgment, a court may consider only admissible evidence.   *See Johnson v. Weld County, Colo.*, 594 F.3d 1202, 1209-10 (10th Cir. 2010).   The factual record and reasonable inferences therefrom are viewed in the light most favorable to the party opposing summary judgment.   *Concrete Works*, 36 F.3d at 1517.   Moreover, because Plaintiff is proceeding *pro se*, the court, "review[s] his pleadings and other papers liberally and hold[s] them to a less stringent standard than those drafted by attorneys."   *Trackwell v. United*

*States*, 472 F.3d 1242, 1243 (10th Cir. 2007) (citations omitted); *see also Haines v. Kerner*, 404 U.S. 519, 520-21 (1972) (holding allegations of a *pro se* complaint "to less stringent standards than formal pleadings drafted by lawyers").   At the summary judgment stage of litigation, a plaintiff's version of the facts must find support in the record.   *Thomson v. Salt Lake Cnty.*, 584 F.3d 1304, 1312 (10th Cir. 2009).   "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment."   *Scott v. Harris*, 550 U.S. 372, 380 (2007); *Thomson*, 584 F.3d at 1312.

### *Defendant's Motion for Summary Judgment*

#### A.  *Failure to Exhaust Administrative Remedies*

Defendant contends that he is entitled to summary judgment because Plaintiff admits in his Complaint that he failed to exhaust his administrative remedies, as required by the Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e(a).

The PLRA provides as follows:

> No action shall be brought with respect to prison conditions under [42 U.S.C. § 1983], or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

42 U.S.C. § 1997e(a).   The exhaustion requirement "applies to all prisoners seeking redress for prison circumstances or occurrences."   *Porter v. Nussle*, 534 U.S. 516, 520 (2002).   "There is no question that exhaustion is mandatory under the PLRA and that unexhausted claims cannot be brought in court."   *Jones v. Bock*, 549 U.S. 199, 211 (2007) (citation omitted); *Woodford v. Ngo*,

6

548 U.S. 81, 84 (2006) ("Exhaustion is no longer left to the discretion of the district court, but is mandatory.").

Though Defendant is correct that Plaintiff admitted in his Complaint that he did not exhaust his administrative remedies (*see* Compl. at 10), a prisoner plaintiff is not required to specifically plead that he has exhausted his available administrative remedies or to attach exhibits proving exhaustion to his complaint. *Jones*, 549 U.S. at 216. The burden is therefore on defendants to raise failure to exhaust as an affirmative defense in a motion for summary judgment. *Id.* If the evidence produced by the parties shows that there are no genuine factual issues preventing a finding that the plaintiff did not properly exhaust his available administrative remedies, the complaint must be dismissed without prejudice. *See Dawson v. Werholtz*, No. 07–3165, 2008 WL 1773866, at *1 n.1 (D. Kan. Apr. 16, 2008) (citing *Fields v. Okla. State Penitentiary*, 511 F.3d 1109, 1113 (10th Cir. 2007) (stating that dismissal of unexhausted claims on summary judgment should be without prejudice)).

Defendant bears the initial burden of showing an absence of evidence to support the Plaintiff's case, *Celotex Corp.*, 477 U.S. at 325. This burden may be met merely by identifying portions of the record which show an absence of evidence to support an essential element of the opposing party's case. *Johnson v. City of Bountiful*, 996 F. Supp. 1100, 1102 (D. Utah 1998). Here, however, Defendant has provided no evidence that Plaintiff failed to exhaust his administrative remedies. Therefore, Defendant has failed to meet her burden, and her motion for summary judgment in this regard properly is denied. *Jones*, 549 U.S. at 216.

7

### B.  *Plaintiff's First Amendment Claim Regarding His Outgoing Mail*

Plaintiff alleges that the defendant violated his First Amendment right to freedom of speech by opening his mail and forwarding it to the district attorney.[4]   (Compl. at 8.)   A federal prisoner does not surrender his constitutional rights at the prison gates.   *Bell v. Wolfish*, 441 U.S. 520, 545 (1979); *Jones v. North Carolina Prisoners' Labor Union*, 433 U.S. 119, 129 (1977); *Wolff v. McDonnell*, 418 U.S. 539, 555–56 (1974).   "Inmates clearly retain protections afforded by the First Amendment." *O'Lone v. Estate of Shabazz*, 482 U.S. 342, 348 (1987).   These retained First Amendment rights include the right to send and receive mail.   *Thornburgh v. Abbott*, 490 U.S. 401 (1989); *Turner v. Safley*, 482 U.S. 78 (1987).   " 'Conversely, prison officials have a duty to maintain security within the prison, and this may include reading inmates' incoming and outgoing mail, with the exception of legal mail.' " *Cotner v. Knight*, 61 F.3d 915, at *5 (10th Cir. July 21, 1995) (quoting *Thongvanh v. Thalacker*, 17 F.3d 256, 258–59 (8th Cir. 1994)).

### a.  *Legal or Non-Legal Mail*

To accommodate both a prison's need for security and prisoners' rights, courts have approved prison policies that allow prison officials to open "legal mail" and inspect it for contraband in the presence of the prisoner.   In *Wolff v. McDonnell*, 418 U.S. 539, 577 (1974), the Supreme Court considered a prisoner's claim involving a state prison policy which permitted the opening of incoming mail from an attorney by prison officials in the presence of the prisoner.   The Court expressed doubt that such a policy infringed the prisoner's First, Sixth or Fourteenth

---

[4]  It appears that Plaintiff alleges constitutional violations only as to the handling of the Cunningham Letter.   (*See generally* Compl. at 5, ¶¶ 6–8; Resp. at 7.)   However, because it is not entirely clear, the court analyzes Plaintiff's claims as if he intended to assert violations related to the handling of both the French and Cunningham Letters.

Amendment rights because "the constitutional status of the rights asserted, as applied in this situation, is far from clear." 418 U.S. at 575. The Court upheld the constitutionality of the mail policy regardless of "which, if any, of the asserted rights are operative here," *id.* at 576–77, and held that "by acceding to a rule whereby the inmate is present when mail from attorneys is inspected, [prison officials] have done all, and perhaps even more, than the Constitution requires." *Id.*; *see also Ramos v. Lamm*, 485 F. Supp. 122, 164 (D. Colo. 1979) (incoming privileged mail is subject to inspection only in the presence of the inmate).

It is undisputed that Plaintiff handed the mail to Deputy Wright to place in the outgoing legal mail. (Compl. at 4, ¶ 1 & 2; Mot., Wright Aff., ¶ 5.) Defendant argues that the envelope containing the Cunningham Letter, however, did not identify Cunningham's position or association with the probation department. (Mot. at 7; *see* Ex. D.) Defendant also argues that, because the envelope was not marked as containing privileged or legal materials, she did not consider the mail to be correspondence with a "public official acting in an official capacity" to meet the Larimer County Detention Center Inmate Mail Policy. (*Id.*, *see* Exs. D, E, and F.) In response, Plaintiff argues that he was unable to mark the envelopes as legal mail because of Larimer County Detention Center's policy prohibiting outgoing mail in which the envelope has "markings, drawings, gang writing, stylized writing, stickers or lip prints." (Resp. at 4; *see* Ex. F.)

Neither of these arguments is persuasive, however, because the undisputed evidence shows that neither the French nor the Cunningham Letter contained legal materials. (*See* Mot., Exs. A & C.) In *Stockdale v. Dwyer*, No. 06-cv-25 CAS, 2007 WL 2994316, at *8 (E.D. Mo. Oct. 11,

2007), the court addressed a case in which the plaintiff falsely labeled his outgoing non-legal mail as legal mail.   The *Stockdale* court reasoned that

> although plaintiff falsely labeled the outgoing envelope as legal, the envelope did not contain legal materials.   The constitutional protection for legal mail only extends to genuine legal mail, as an inmate has no constitutional right to prevent prison officials from opening or inspecting nonlegal mail.   Plaintiff cannot change the status of his nonlegal mail into legal mail subject to constitutional protection by placing a false designation on the outside of the envelope.

*Stockdale*, 2007 WL 2994316, at *8.   *See also Cotner*, 61 F.3d 915, at *7 (plaintiff's letters to attorneys soliciting representation for his legal problems did not qualify as privileged legal mail).

As in *Stockdale*, here it is clear that the French Letter, which contains only the statement, "Karma is a Bitch so is your Mommy and Daddy," (Mot., Ex. A), is not legal mail.   It also is clear that the Cunningham Letter, in which Plaintiff states he "[has] to spend 1 ½ to 3 years locked up . . . contemplating how much fun it's going to be watching the judge lose some of his Relatives when I get out," and in which Plaintiff admits he is no longer on probation due to his arrest and subsequent conviction, is not legal mail.   (*Id.*, Ex. C.)   Therefore, the court now must analyze Plaintiff's claims as they relate to non-legal, non-privileged mail.

### b.   Martinez *Factors*

In order to legitimately censor outgoing mail, prison officials must show two things. First, "the regulation or practice in question must further an important or substantial governmental interest unrelated to the suppression of expression."   *Procunier v. Martinez*, 416 U.S. 396, 413 (1974).   Second, "the limitation of First Amendment freedoms must be no greater than is necessary or essential to the protection of the particular governmental interest involved."   *Id.* The less deferential *Martinez* analysis is limited to outgoing mail because the "implications of

outgoing correspondence for prison security are of a categorically lesser magnitude than the implications of incoming materials." *Thornburgh*, 490 U.S. at 413.

The Supreme Court in *Thornburgh*, made clear that "outgoing correspondence that magnifies grievances or contains inflammatory racial views cannot reasonably be expected to present a danger to the community *inside* the prison." 90 U.S. at 411–12 (citing *Martinez*, 416 U.S. at 416). Nevertheless, "corrections officers can inspect *all* outgoing mail if the inspection is reasonably related to substantial government interests," *Brown v. Saline County Jail*, 303 F. App'x 678, 684 (10th Cir. 2008) (citing *Beville v. Ednie*, 74 F.3d 210, 214 (10th Cir.1996)), including mail that contains "escape plans, plans related to ongoing criminal activity, and threats of blackmail or extortion." *Thornburgh*, 490 U.S. at 411–12 (citing *Procunier v. Martinez*, 416 U.S. 396, 412–13 (1974).[5]

The Larimer County Detention Center Policy 7300.06 provides that the "night housing deputy opens and inspects all outgoing non-privileged mail for contraband and scans for key words related to . . . criminal activity. . . ." (*Id.*, Ex. E at 3.) The policy also states that if the letter indicates possible criminal activity, the housing deputy will deliver the letter to the security shift supervisor, who will evaluate the contents of the letter and possibly forward the letter to the security lieutenant for additional action. (*Id.*) The Larimer County Detention Center Inmate Handbook, Section 11.7, states that mail may be confiscated and turned over to a criminal investigator when it contains threats or plans for criminal activity. (*Id.*, Ex. F at 1.)

---

[5]*Thornburgh* limited *Martinez* to outgoing mail and explained that it did not, contrary to appearances, require a "least restrictive means" test. *Thornburgh*, 490 U.S. at 410–12.

Plaintiff argues that the defendant should not have confiscated the French and Cunningham Letters because "[s]he does not allege that [they] contained threats of harming the judge."[6]   (Resp. at 2.)   However, it is undisputed that after confiscation of the French and Cunningham Letters, Plaintiff was charged with the felony offense of Retaliation Against a Judge, a Class 4 Felony. (Mahoney Aff., ¶ 11; Compl. at 13–14.)   Plaintiff was tried and convicted of Retaliation Against a Judge, Attempt to Commit the Crime of Retaliation Against a Judge, and Menacing (Doc. No. 49, Exs. 11–13), for which he received a prison sentence of ten years (Doc. No. 49, Ex. 15, ¶ 1).   The undisputed evidence shows, therefore, that the French and Cunningham Letters contained "plans related to ongoing criminal activity," *Thornburgh*, 490 U.S. at 410–12, and thus the confiscation was "reasonably related to substantial government interests," *Brown*, 303 F. App'x at 684.

Regulations that allow censorship of merely embarrassing or unflattering speech do not further the government's substantial interests related to security or rehabilitation.   *Martinez*, 416 U.S. at 416 (striking regulations that allowed the censorship of complaints, grievances, and inflammatory political and racial views).   Citing *Martinez*, Plaintiff argues that the defendant was "trying to protect Judge French from receiving a vulgar, insulting letter from the plaintiff." (Resp. at 3.)   However, the purpose of Larimer County Detention Center Policy 7300.06 or Section 11.7 of the Larimer County Detention Center Inmate Handbook clearly is not aimed at protecting judges from vulgarity.

Plaintiff also argues that the defendant arbitrarily decided to open the French and Cunningham Letters because of her own personal prejudices.   (Resp. at 2, 7.)   It is true that, if

---

[6] Plaintiff does, however, admit that the letters were "threatening in nature."   (Compl. at 5, ¶ 9.)

"prison officials censor simply by indulging their personal prejudices and opinions, while purporting to apply constitutional standards," the courts have found this an unconstitutional practice.  *Jones v. Caruso*, 569 F.3d 258, 267 (6th Cir. 2009) (citing *Martinez*, 416 U.S. at 415). Plaintiff's allegations are mere conclusions, however, and unsupported by facts.  The undisputed evidence shows that Defendant opened the Cunningham Letter because a combination of factors raised safety and security concerns in Defendant's mind, including Plaintiff's statements to Wright after breakfast about Judge French's family, the contents of Plaintiff's letter to Judge French, Plaintiff's refusal to talk to Defendant about the letter and his earlier statements, and Plaintiff's request for return of all his mail after being questioned by Wright about his statements regarding Judge French and his family.  (Mot., Mahoney Aff., ¶ 10.)  Therefore, the court finds Defendant has shown that her decision to censor Plaintiff's mail furthered a substantial governmental interest unrelated to the suppression of expression.

In applying the second part of the *Martinez* analysis, this court concludes that the decision to confiscate Plaintiff's mail was no greater an infringement on Plaintiff's First Amendment liberties than was necessary to protect the government's interest in order and security, both within and outside the prison.[7]  *Martinez*, 416 U.S. at 413.  Reading through inmate mail and censoring only that mail that presents information regarding ongoing criminal activity or specific threats to the institution's security goals does not sweep too broadly and is a valid, limited constraint on Plaintiff's freedom of speech.

---

[7] Plaintiff does not argue that Defendant's regulation swept too broadly.  Rather, Plaintiff argues that, in order to be constitutionally valid, the regulation must advance security, order, or rehabilitation *within* the prison.  (Resp. at 4.)  The ruling in *Martinez* clearly is contrary to Plaintiff's position.

Defendant should be granted summary judgment on Plaintiff's First Amendment claims.[8]

### C.  Plaintiff's Fourth Amendment Claim Regarding Search and Seizure

Plaintiff alleges the defendant violated his Fourth Amendment right to be free from unreasonable search and seizure by opening his mail without obtaining a search warrant.   (Compl. at 7.)   "The gravamen of a Fourth Amendment claim is that the complainant's legitimate expectation of privacy has been violated by an illegal search or seizure."   *Kimmelman v. Morrison*, 477 U.S. 365, 374 (1986) (citation omitted).   The scope of a federal inmate's fourth amendment protection is not identical to that which he enjoys in his own home or on the streets. *Lanza v. New York*, 370 U.S. 139, 143–44 (1962).   "A right of privacy in traditional Fourth Amendment terms is fundamentally incompatible with the close and continual surveillance of inmates and their cells required to ensure institutional security and internal order."   *Hudson v. Palmer*, 468 U.S. 517, 527–28 (1994).   Thus, the Supreme Court held that "the Fourth Amendment proscription against unreasonable searches does not apply within the confines of the prison cell." 468 U.S. at 526.   Rather, "[t]he fact of arrest and incarceration abates all legitimate Fourth Amendment privacy and possessory interests in personal effects. . . ."   *Id.* at 538 (O'Connor, J., concurring).

---

[8]  To the extent the court also must analyze Plaintiff's First Amendment allegation in the context of an access-to-courts claim, *see Brown*, 303 F. App'x at 683, it is clear Plaintiff does not assert a claim for denial of access to the courts.   To assert a claim for denial of access to the courts, a plaintiff "must show that non-delivery of his legal mail resulted in 'actual injury' by 'frustrat[ing],' 'imped[ing],' or 'hinder[ing] his efforts to pursue a legal claim.' "   *Simkins v. Bruce*, 406 F.3d 1239, 1243 (10th Cir. 2005) (quoting *Lewis v. Casey*, 518 U.S. 343, 351–53 (1996)).   The court "will not supply additional facts, nor will [it] construct a legal theory for plaintiff that assumes facts that have not been pleaded." *Dunn v. White*, 880 F.2d 1188, 1197 (10th Cir. 1989).

To assert a violation of Fourth Amendment rights, Plaintiff must demonstrate that he had an "expectation of privacy in the place searched, and that his expectation is reasonable." *United States v. Gordon*, 168 F.3d 1222, 1225 (10th Cir. 1999) (citing *Minnesota v. Carter*, 525 U.S. 83 (1998)).   In *Hudson*, the Supreme Court established that prisoners do not have any reasonable expectation of privacy in their prison cells or in articles that they have in their possession while in prison.   *Id.* at 525–28.   In addition, in relation to non-privileged prison mail, the Tenth Circuit has held that its "regulation by prison officials is 'essentially an administrative matter in which the courts will not intervene.' "   *Gordon*, 168 F.3d at 1228 (citing *Wilkerson v. Warden of U.S. Reformatory, El Reno*, 465 F.2d 956 (10th Cir. 1972)).   In *Gordon*, the Tenth Circuit found that an individual sending non-privileged, non-legal mail to an inmate had no reasonable expectation of privacy in that mail, as the prison regulations provided that such mail may be inspected at any time.   *Id.*   Likewise, in *United States v. Walton*, 935 F. Supp. 1161, 1164–65 (D. Kan. 1996), the court held that a prisoner had no reasonable expectation of privacy in non-legal, non-privileged mail once he gave it to a prison official to deliver.

The confiscation of Plaintiff's correspondence did not violate the Fourth Amendment because plaintiff had no reasonable expectation of privacy in his non-legal mail notwithstanding his unsuccessful attempt to cloak the mail with the mantle of privilege.   Defendant is entitled to summary judgment on Plaintiff's Fourth Amendment claim.

### D.  Plaintiff's Fourteenth Amendment Claim

Plaintiff also alleges the defendant violated his Fourteenth Amendment due process rights by failing to obtain a search warrant before opening his mail.   (Compl. at 9.)

15

In order to state a procedural due process claim, a plaintiff must first establish the existence of a recognized property or liberty interest.  *Stidham v. Peace Officer Stds. and Training*, 265 F.3d 1144, 1149 (10th Cir. 2001).   The Tenth Circuit has held that liberty and property interest claims by prisoners are to be analyzed under the standard set forth in *Sandin v. Conner*, 515 U.S. 472 (1995).   "A deprivation occasioned by prison conditions or regulations does not . . . require procedural due process protection unless it imposes an 'atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.' "  *Steffey v. Orman*, 461 F.3d 1218, 1221 (10th Cir. 2006) (quoting *Sandin*, 515 U.S. at 484).   Among other things, "an inmate's right to receive mail and other packages may be limited by prison regulations that are reasonably related to legitimate penological interests."  *Id.* at 1222.

The court has already determined that the Larimer County Detention Center Policy 7300.06 and Section 11.7 of the Larimer County Detention Center Inmate Handbook at issue in this case are reasonably related to legitimate penological interests.  *See supra.* Therefore, Defendant is entitled to summary judgment on Plaintiff's Fourteenth Amendment claim.

### E.  *Qualified Immunity*

Defendant, in her individual capacity, raises the defense of qualified immunity to Plaintiff's claims.   Whether a defendant is entitled to qualified immunity is a legal question.  *Wilder v. Turner*, 490 F.3d 810, 813 (10th Cir. 2007).   To overcome the defendant's claim of qualified immunity, the plaintiff must establish that the defendant's actions violated a constitutional or statutory right of the plaintiff's and that the right at issue

16

was clearly established at the time of the defendant's alleged unlawful conduct.   *Albright*

*v. Rodriguez*, 51 F.3d 1531, 1534 (10th Cir. 1995).   "[C]ourts have discretion to decide

which of the two prongs of the qualified immunity analysis should be addressed first in

light of the circumstances in the particular case at hand."   *Id.*   "Qualified immunity is

applicable unless" the plaintiff can satisfy both prongs of the inquiry.   *Herrera v. City of*

*Albuquerque*, 589 F.3d 1064, 1070 (10th Cir. 2009) (internal quotation marks and citations

omitted).

The plaintiff has not established that the defendant violated a constitutional or statutory

right of the plaintiff's.   Therefore, Defendant is entitled to qualified immunity as to each of

Plaintiff's claims.

***Plaintiff's Motion for Summary Judgment***

Plaintiff's motion for summary judgment is for the most part a recitation of the arguments

and facts made in response to Defendant's motion for summary judgment.   The arguments and

recitations do not add to or change the analysis of Plaintiff's claims.   Plaintiff's motion raises no

genuine dispute as to any material fact.   Fed. R. Civ. P. 56(a).   Therefore, Plaintiff's motion for

summary judgment properly is denied.

**WHEREFORE**, for the foregoing reasons, this court respectfully

**RECOMMENDS** that

1.   "Defendant's Motion for Summary Judgment" (Doc. No. 28) be GRANTED; and

2.   "Plaintiff's Motion for Summary Judgment" (Doc. No. 25) be DENIED.

## ADVISEMENT TO THE PARTIES

Within fourteen days after service of a copy of the Recommendation, any party may serve and file written objections to the Magistrate Judge's proposed findings and recommendations with the Clerk of the United States District Court for the District of Colorado.   28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *In re Griego*, 64 F.3d 580, 583 (10th Cir. 1995).   A general objection that does not put the district court on notice of the basis for the objection will not preserve the objection for *de novo* review.   "[A] party's objections to the magistrate judge's report and recommendation must be both timely and specific to preserve an issue for de novo review by the district court or for appellate review."   *United States v. One Parcel of Real Prop. Known As 2121 East 30th Street, Tulsa, Okla.*, 73 F.3d 1057, 1060 (10th Cir. 1996).   Failure to make timely objections may bar *de novo* review by the district judge of the magistrate judge's proposed findings and recommendations and will result in a waiver of the right to appeal from a judgment of the district court based on the proposed findings and recommendations of the magistrate judge.   *See Vega v. Suthers*, 195 F.3d 573, 579-80 (10th Cir. 1999) (a district court's decision to review a magistrate judge's recommendation *de novo* despite the lack of an objection does not preclude application of the "firm waiver rule");   *One Parcel of Real Prop.*, 73 F.3d at 1059-60 (a party's objections to the magistrate judge's report and recommendation must be both timely and specific to preserve an issue for *de novo* review by the district court or for appellate review);   *Int'l Surplus Lines Ins. Co. v. Wyo. Coal Ref. Sys., Inc.*, 52 F.3d 901, 904 (10th Cir. 1995) (by failing to object to certain portions of the magistrate judge's order, cross-claimant had waived its right to appeal those

18

portions of the ruling); *Ayala v. United States*, 980 F.2d 1342, 1352 (10th Cir. 1992) (by their failure to file objections, plaintiffs waived their right to appeal the magistrate judge's ruling); *but see, Morales-Fernandez v. INS*, 418 F.3d 1116, 1122 (10th Cir. 2005) (firm waiver rule does not apply when the interests of justice require review).

Dated this 21st day of February, 2014.

BY THE COURT:

Kathleen M. Tafoya
United States Magistrate Judge

19